UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| TELINA S. FULLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No.   3:25-CV-547-TAV-DCP |
| | ) |
| KNOX COUNTY, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION

Plaintiff, an individual previously confined in the Knox County Detention Facility ("KCDF"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that (1) she was kept in the KCDF two days longer than her sentence, and (2) her property was improperly taken at the time of her arrest, and it was not returned to her immediately upon release [Doc. 2]. Plaintiff also filed an amended complaint asserting that she is still subjected to a threat of unlawful and unconstitutional detention and challenging her "pretrial conditions" [Doc. 13]. Both complaints are now before the Court for screening. Also before the Court are Plaintiff's two motions to proceed *in forma pauperis* [Docs. 1, 14] and motion regarding access to e-filing [Doc. 9].

For the reasons set forth below, Plaintiff's first motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**, her second motion for leave to proceed *in forma pauperis* [Doc. 14] will be **DENIED as moot**, this action will be **DISMISSED** because the complaints fail to state a claim upon which relief may be granted under § 1983 as to Defendant Knox County, and Plaintiff's motion regarding e-filing [Doc. 9] will be **DENIED as moot**.

**I.     FILING FEE**

As Plaintiff's first motion for leave to proceed *in forma pauperis* demonstrates that she is unable to pay the filing fee, this motion [Doc. 1] is **GRANTED**, and Plaintiff's second motion to proceed *in forma pauperis* [Doc. 14] is **DENIED as moot**. As Plaintiff does not appear to be in custody at this time, the Court does not assess her with the filing fee.

**II.    SCREENING STANDARD**

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure to state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Formulaic and conclusory recitations of the elements of a claim and allegations that do not raise a plaintiff's right to relief "above a speculative level" fail to state a plausible claim. *Id.* at 681; *Twombly*, 550 U.S. at 570. However, courts liberally construe pro se

pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim under 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him a federal right. 42 U.S.C. § 1983.

### III. ALLEGATIONS

In her complaint, Plaintiff first claims that she was kept in the KCDF two days past her sentence release date [Doc. 2, p. 1]. Specifically, Plaintiff states that her 10-day sentence began on October 9, 2025, and she therefore should have been released by October 18, 2025, but instead was not released until October 20, 2025 [*Id.* at 1]. In support of this claim, Plaintiff filed two October 9, 2025, Knox County Criminal Court documents from a case against her for "DUI: first offense," both of which are titled "mittimus" [Doc. 2-1, pp. 8, 9]. The first October 9 mittimus indicates that Plaintiff was taken into custody on October 9, 2025, and designated for release on October 18, 2025, at 12:00 p.m. [*Id.* at 8]. The second October 9 mittimus likewise indicates that Plaintiff was taken into custody on that day but also states that she "is to be held without bond pending further Order of the Court" [*Id.* at 9]. Plaintiff also filed copies of electronic messages she sent to KCDF officials regarding her release date, to which she received no response [*Id.* at 4].

Plaintiff next claims that her property was improperly seized when she was arrested for her KCDF confinement, and that she was not allowed to take her property with her immediately when she was released from that confinement [Doc. 2, p. 2]. Plaintiff specifically states that when the state court ordered her arrest, "[she] secured her personal cell phones and effects in a combination-lock bag" [*Id.*]. The officers who arrested Plaintiff

3

demanded that she provide them the combination for the bag, but she refused to provide it, which she categorizes as an assertion of "her Fourth and Fifth Amendment rights" [*Id.*]. The officers stated that she was "making it harder on [her]self" by refusing their request, and when she was released on October 20, 2025, unspecified KCDF officials refused to release her property to her [*Id.*]. As such, Plaintiff did not have her "identification, money, or communication device" when she was released, and she had to come back to get her property later [*Id.*]. To support this claim, Plaintiff attached copies of messages she exchanged with unspecified KCDF officials regarding obtaining her property, in which the officials indicated that she could retrieve the bag upon her release [Doc. 2-1, p. 2]. Plaintiff also attached a printed Google map that KCDF employees provided her at her release, which she states both "confirms the date and time of [her] release" and "demonstrates the practical consequences of Defendant's actions—releasing Plaintiff without her phone or navigation capabilities, forcing her to rely on a paper map for basic directions to be able to retrieve her belongings" [Doc. 2, p. 2; Doc. 2–1, p. 6]. This map indicates, in relevant part, that (1) it was printed on October 20, 2025, at 2:18 a.m., and (2) it provides directions from 400 Main Street SW, Knoxville, TN 37902, to 5001 Maloneyville Road, Knoxville, TN 37918 [Doc. 2-1, p. 6].

In her amended complaint, Plaintiff incorporates her previous complaint and claims that "[t]he pattern of unlawful detention continues" through a threat that she will be unlawfully detained for a mental health evaluation in a manner that will violate her due process rights [Doc. 13, p. 1]. Plaintiff then reiterates her assertion that she was held two days over her 10-day sentence [*Id.*] before setting forth various allegations regarding the "pretrial conditions" to which she has been subjected, including mainly "an Ignition

4

Interlock Device (IID)," which she claims has cost her money and "demonstrates a systemic pattern of imposing punitive pretrial conditions without due process that extends across multiple Knox County judges and proceedings" [*Id.* at 2]. Plaintiff supports these assertions by citing exhibits from a separate case she has filed, specifically *Fuller v. Sanchez, et al.*, No. 3:25-CV-55 ("*Sanchez*") [*Id.*]. The cited exhibits include a "catalog" of motions she has filed in what appears to be the criminal proceeding against her and an open records request she filed seeking camera footage and an internal records review [*Id.*]. *Sanchez*, No. 3:25-CV-550, Doc. 1, pp. 14–17 and Doc. 15, pp. 20–22.

Plaintiff then claims that Knox County has "customs and policies [that] exhibit deliberate indifference," in support of which she states as follows:

> Failure to train on constitutional detention standards
> Lack of oversight for pretrial condition imposition
> Systemic tolerance of over-detention and unlawful confinement
> Pattern of ignoring documented constitutional violations . . . .

[*Id.*]. To support her allegation that Knox County has a pattern of ignoring constitutional violations, Plaintiff cites incident reports documenting complaints she has filed with the Knox County Sheriff's Office regarding various events, specifically an alleged theft from her storage unit, an alleged burglary of her residence, and an alleged assault on her by an unknown person while she was driving, as well as attempts to access her bank account after the alleged burglary and assault, all of which she filed as exhibits in *Sanchez* [*Id.*]. *Sanchez*, No. 3:25-CV-550, Doc. 15, pp. 4–6, 14–17, 25–29.

Plaintiff has sued Knox County and requests declaratory, injunctive, and monetary relief [Doc. 2, pp. 1, 3; Doc. 13, pp. 2–3].

5

C.  Analysis

For Plaintiff's complaints to state a cognizable claim for relief under §1983 against Defendant Knox County, they must contain facts that allow the Court to plausibly infer that this municipality's custom or policy caused violations of Plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (providing that a municipality may be liable only where "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury"). Such a claim may be based on the following:

> (1) the existence of an illegal official policy or legislative enactment;
> (2) an official with final decision making authority ratifying illegal actions;
> (3) the existence of a policy of inadequate training or supervision; or
> (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted). A plaintiff also may hold a municipality liable under § 1983 for its "inaction" by plausibly alleging:

> (1) the existence of a clear and persistent pattern of unconstitutional conduct;
> (2) notice or constructive notice on the part of the [County];
> (3) the [County's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and
> (4) that the [County's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1996)).

While Plaintiff makes general references to Knox County customs and policies throughout her complaints, the most specific allegation Plaintiff makes to support a municipal liability claim is her assertion that Knox County has a pattern of ignoring

6

constitutional violations, in support of which she cites her own complaints to the Knox County Sheriff's Office about incidents for which she seeks to hold individuals criminally liable. But Plaintiff does not have any right to an investigation of such claims or the prosecution of another individual. *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007) ("There is no statutory or common law right, much less a constitutional right, to an investigation." (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) (noting that "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"))). Accordingly, Plaintiff's allegation that Knox County has a custom or pattern of ignoring constitutional violations does not allow the Court to plausibly infer that any custom or policy of Knox County has caused a violation of Plaintiff's constitutional rights.

Plaintiff's remaining general references to customs or policies of Knox County in her complaints are merely formulaic, and they therefore also fail to state a plausible claim for violation of § 1983 as to Knox County. *Iqbal*, 556 U.S. at 681; *Baker v. Columbus*, No. 2:25-CV-1052, 2025 WL 3250912, at *4 (S.D. Ohio Nov. 21, 2025) (holding that where the plaintiff "offer[ed] only . . . bare legal conclusions" but no facts to support *Monell* liability, the complaint was subject to dismissal at screening); *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 750 (S.D. Ohio 2022) (holding that where the plaintiff's complaint "mixe[d] and matche[d] terminology associated with *Monell* claims—'ratif[ication]'; 'failure to adequately train and/or supervise;' and the implementation of 'customs and policies . . . that, on their face, violate the Fourteenth Amendment" but did not provide

any "concrete factual allegations" to support the claims, the complaint was subject to dismissal at screening).

Accordingly, this action will be **DISMISSED**.

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's first motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**, and Plaintiff's second motion to proceed *in forma pauperis* [Doc. 14] is **DENIED as moot**;

2. Even liberally construing Plaintiff's complaint, it fails to state a claim upon which relief may be granted under § 1983;

3. Accordingly, this action will be **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A;

4. Plaintiff's motion for access to e-filing [Doc. 9] is **DENIED as moot**; and

5. The Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

AN APPROPRIATE JUDGMENT ORDER WILL ENTER.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE